Elizabethtown Savings Institution v. Gerber.

THE ELIZABETHTOWN SAVINGS INSTITUTION, appellant,

v.

JAMES J. GERBER, assignee &c., et al., respondents.

1. An order made by force of the New York code, upon a debtor of a defendant, on a judgment to pay the debt due to the plaintiff in the judgment, in part satisfaction thereof, will be held to be conclusively binding in this state.

2. And if the debt so ordered to be paid were in the custody of the court of chancery, such foreign order of judgment would lay in itself a ground for a bill seeking such money.

3. But where such moneys were in the hands of a corporation of this state, and it appeared that such corporation was not cited in the proceeding in New York, and did not appear therein, such foreign order requiring it to pay said moneys, such order was void.

4. *Query*—Whether moneys can be attached in a foreign state in the hands of a litigant in the courts of this state, when the time for pleading, on the part of such litigant, has expired.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Elizabethtown Savings Inst. v. Gerber, 7 Stew. Eq. 130.*

The appellant, the Elizabethtown Savings Institution, obtained a judgment in New York against one Ahern. In proceedings under this judgment an order was made by the New York court that the Esterbrook Steel Pen Manufacturing Company, or its agent, should appear and be examined touching its alleged indebtedness to Ahern. This proceeding was taken by virtue of the New York code, and it having appeared, by an examination of the agent of this company, that it was indebted to Ahern in an amount that was being ascertained in the court of chancery of this state, an order was made by the New York judge that one Esterbrook, who was the secretary of said pen manufacturing company, should pay to the appellant any amount which might be due to said Ahern from said pen company, up to the amount

of said judgment, and forbidding him from paying the same to said Ahern, or to any one for him.

The Esterbrook Steel Pen Manufacturing Company was a corporation of this state, having a place of business in New York.

In the suit in chancery in this state between the pen manufacturing company and Ahern a certain amount was found to be due from the former to the latter, and which amount having been paid into court, the bill in the present case was filed by the appellant to reach that fund.

*Mr. Hamilton Wallis,* for appellant.

I. The supreme court of the state of New York had jurisdiction to make the order upon which our bill was based. *Moulin* v. *Insurance Co., 4 Zab. 222; Camden &c. Mill* v. *Swede Iron Co., 3 Vr. 15.*

II. This order of the supreme court of New York must be enforced by the courts of this state. *Lynch* v. *Johnson, 48 N.Y. 27; Allen* v. *Staning, 26 How. Pr. 57; Home Ins. Co.* v. *Howell, 9 C. E. Gr. 238; Bidlack* v. *Mason, 11 C. E. Gr. 230; Gifford* v. *Thorn, 1 Stock. 721, 722.*

III. If not otherwise entitled, this order is an agreement in law between the pen company and Ahern for the payment of this debt to the appellant; such agreement creates a trust in favor of the appellant, which the courts in this state will enforce. *Mahaney* v. *Parman, 4 Duer 606, note; Barnes* v. *Smith, 16 Abb. Pr. 420; Parker* v. *Mygridge, 2 Story 334.*

IV. The defendant Gerber, as to this fund, stands exactly in the position of Ahern; he has no better claim than Ahern had. *Cook* v. *Tullis, 18 Wall. 332; Kelly* v. *Scott, 49 N. Y. 595.*

*Mr. William P. Wilson,* for respondent.

I. The bill on this cannot be sustained, for the reason that no lien on the money in controversy, equitable or otherwise, ever

existed by virtue of the order of the New York court. *Mellville* v. *Brown, 1 Harr. 364; Edgar* v. *Clevenger, 1 Gr. Ch. 258; Young* v. *Frier, 1 Stock. 465; Swayze* ·v. *Swayze, 1 Stock. 273; Bigelow Blue Stone Co.* v. *Magie, 12 C. E. Gr. 392.*

II. The right to whatever money was decreed to be paid by the Esterbrook Steel Pen Company vested in Gerber, the assignee of Ahern, on April 3d, 1878, and cannot be divested by a decree made June 25th, 1878. *Esterbrook Steel Pen Mfg. Co.* v. *Ahern, 3 Stew. Eq. 343.*

III. The fund in this case cannot be reached by bill in chancery. *Rev. p. 120; Hardenburg* v. *Blair, 3 Stew. Eq. 656.*

IV. The New York court had no jurisdiction over the personal property of the pen company, which was a New Jersey corporation, and had an office here.

V. The order upon which the bill is founded is impotent to transfer or touch any debt or obligation of the corporation to Ahern.

The opinion of the court was delivered by

·BEASLEY, C. J.

The argument of the counsel of the appellant was rested on this basis of fact, that the appellant, having obtained a judgment against Ahern in the city of New York, in aid of that proceeding duly attached certain moneys due to him from the Esterbrook Steel Pen Manufacturing Company, and obtained a judicial order in the New York court that this latter company should pay the moneys thus due in satisfaction, *pro tanto*, of the appellant's judgment, and that the moneys in question were in the custody of the court of chancery of this state. If this constituted the exact truth of this case, as it is contained in the bill of the appellant, I see no reason to doubt that the present suit would be entitled to succeed. The New York code authorized a proceeding against debtors of the judgment debtor, to the effect that such debtors be ordered to pay the sums due from them to

the judgment creditor in satisfaction of his claim.   Such a pro-
vision is not, in its general nature, unlike our attachment act,
and, in point of legality, appears to be unexceptionable.   Nor
does there seem to be any reason to question that such a judicial
order requiring the application of such moneys to the satisfac-
tion of the judgment, would be enforceable not only within the
jurisdiction in which it was rendered, but also in every other
state.    In this case it is true that the Esterbrook Steel Pen
Manufacturing Company, that was made the garnishee in this
case, was a corporation of this state, but it had a place of busi-
ness, and an officer representing it, in New York, and thus was
liable to be brought under the jurisdiction of the courts of that
state with respect to a matter of this kind, quite as much so as
though it had been an individual having his domicil here, but
being present and served with notice in New York.   Regarding,
therefore, this corporation as legally present in that state, and as
duly served with process, and as having been adjudged to pay
this money to the appellant, such a course of law would be as
kinding here as it would be in the state in which it occurred.
The court rendering such a decision would have cognizance over
the cause and over the person, and upon general legal rules, a
judgment so founded would be operative everywhere in this
country.   The present order is in the nature of an equitable
procedure, and no doctrine is more fixed than the principle that
a court of chancery, having jurisdiction over the person, and
the cause being one of equitable cognizance, will exert its author-
ity, no matter where the property in dispute is situated.   An
exercise of such a power is to be found in the noted case of *Penn
v. Lord Baltimore, 1 Ves. Sr. 444,* in which Lord Hardwicke
decreed the specific performance of articles concerning the
boundaries of two provinces in America.   The decisions are
numerous to this same purpose. *3 Lead. Cas. Eq. 767.*   The
question of authority and jurisdiction being conceded, it follows
that the resulting decision must be conclusive, and, by force of
the national constitution and legislation, must be as effectual in
this state as it is in the state of New York.   Nor, assuming
the foregoing premises, would a case be presented in which it

would be necessary that a judgment in this state should be obtained in order to lay a foundation for an appeal to equity. Such a course is indispensable in those instances where the fact that a judgment exists which is not available at law, constitutes the only ground of an appeal for the assistance of a court of chancery, as, for example, when a creditor seeks to set aside the voluntary or fraudulent conveyances of his debtor. But in such a case as the present the nature of the judgment confers an equity which in itself will support the proceeding requisite to vindicate and enforce it. A judicial order that the garnishee owes a debt to the defendant in the judgment, and that such debt be paid over to the plaintiff in the judgment, such moneys being in the custody of a court of equity, creates, *per se*, a right to apply to such court for such moneys, in the same way as an assignment of such moneys from the party owing them to the plaintiff in the judgment would have created. Such a decree finally settles the plaintiff's right to such fund, and that right is an equitable one. Such a right, in my opinion, could be enforced in this state by a bill in equity properly framed.

But although, as I have said, the above-stated facts formed the ground of the argument of the counsel of the appellant, they are not the facts upon which the decision of this court must be based. The appellant has stated his case in his bill, and, by well-settled rules, he cannot ask for relief except on the foot of such statement. From that presentation of facts, it is not easy to comprehend how it can be plausibly claimed that the appellant has obtained any lien upon or claim to the fund which is here in dispute. The defect in the case made in this bill is, that it utterly fails to show that the Esterbrook Steel Pen Manufacturing Company has, by the judicial order made by the judge in New York, been required to pay this money to the appellant. Indeed, it does not appear from the bill that this corporation was in any wise connected with the proceedings ancillary to the New York judgment. What appears is this: After showing the judgment obtained against Ahern, and that Esterbrook was the secretary and managing agent of the pen manufacturing company, with an office in New York city, the bill proceeds as follows:

"That at or about the time last aforesaid, your orator, pursuant to the laws of the state of New York, applied to and obtained from one of the justices of the supreme court, an order requiring said Esterbrook, as such officer, to make discovery of what, if anything, was due to said Ahern from said pen company; that afterwards said Esterbrook was duly examined before said court, by its proper officer, under said order, and that, on or about the second day of March, in said year, an order was duly made and entered in said action in said supreme court, requiring said Esterbrook, as such officer, to pay to your orator any amount which might be due to said Ahern from said pen company, up to the amount of said judgment, and forbidding him from paying the same to said Ahern, or to any one for him."

The foregoing statement constituted the entire claim of the appellant to the moneys in question. The corporation is alleged to owe the money, and, as far as appears, without notice to such corporation, one of its agents is cited to appear before a judge, and is examined, and an order made that he, the agent, pay the money of the corporation to the plaintiff in the judgment. Such an order, so far as the corporation is concerned, is void upon its face, because the judge making the order had not acquired jurisdiction over the corporate body, and, in point of fact, according to the statements of the bill, he has not attempted to bind it by his decision. It is not necessary to cite authorities to show that a judgment rendered in one state will not be enforced in the courts of another, when it affirmatively appears that such judgment was rendered in the absence of jurisdiction over the person and cause of action. That doctrine has been announced in several decisions of the courts of this state. According to his own showing, the appellant had no claim whatever to the moneys in dispute, and, consequently, his bill was properly dismissed by the vice-chancellor.

And it should also be observed that, in addition to this infirmity in the appellant's case, inherent in the mode in which he has presented it, there is another difficulty which, in the nature of the transaction, was, it may be, invincible. As the case was circumstanced, it may well be doubted whether this debt due from the pen manufacturing company was attachable by virtue of the New York process. The quality of the affair that gives rise to this question consists in the circumstance that, at the time of

such attempted seizure, the claim was in the course of judicial decision in this state. The bill in chancery between the pen manufacturing company and Ahern was filed in 1876, and the order to appropriate these moneys embraced in that suit was made by the New York court in 1878, so that the time for pleading in the former proceeding had expired before the foreign order came into effect. It therefore followed that, in the orderly sequence of events, the domestic and the foreign judgment would of necessity conflict and stand in direct opposition to each other; for, by the decree in chancery in this state, the pen manufacturing company would be ordered to pay these moneys to Ahern, while, by the judicial mandate of the New York judge, it would be forbidden from paying them to that person. Inasmuch, therefore, as the judicial cognizance upon the subject of litigation had attached in the court of this state before any attempt was made to put it *sub judice* in the foreign jurisdiction, the inquiry is whether such attempt was, upon legal principles, legitimate. A negative response to this question is to be found in the case of *Shinn* v. *Zimmerman, 3 Zab. 150*. That was a case in which an attachment in this state had been levied on moneys due from a defendant in in a judgment obtained in Pennsylvania, the plaintiff in such judgment being the defendant in attachment. The decision of the court was, that, under the conditions of fact stated, such a debt was not attachable. In explaining the reasons for this result, Chief-Justice Green uses this language : " Upon a question of conflict of jurisdiction, it is clear that the court which first acquires jurisdiction of the subject-matter of controversy is entitled to exercise it, and to enforce the execution of its own judgment. If the court in Pennsylvania permit the attachment to supersede the execution, it would, in effect, permit the process of the courts of this state to interfere with the execution of its own judgment. It is obvious, moreover, that if executions may thus be arrested, it would, in respect to judgments in this state, as well as elsewhere, present a ready mode of embarrassing the administration of justice and delaying the process of the courts."

It will be observed that if the proceedings in the court which has acquired the right of primary jurisdiction have proceeded so

far that the defendant in such action is so placed that he has no opportunity to plead the circumstance of the foreign attachment, the principle adopted in the case just cited becomes applicable, for the judgments which must result in the former and the latter case necessarily will assume the form of contradictories. In *Thorndike* v. *De Wolf, 6 Pick. 120,* the court said that " the trustee process shall be served before the party summoned shall be concluded by the state of the pleadings against showing in defence that the debt or property is attached in his hands."

The question thus alluded to is one of interest and importance, but one which it is not necessary, at the present time, to decide, it being thus referred to merely for the purpose of excluding such inferences as might be drawn from the silence of this court upon the subject.

The decree should be affirmed, with costs.

For affirmance—BEASLEY, C. J., DEPUE, KNAPP, PARKER, REED, VAN SYCKEL, CLEMENT, COLE, GREEN, WHITAKER— 10.

For reversal—DIXON—1.